UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

E.K. by and through his                :
parents and next friends,              :
MR. AND MRS. K.,                       :
    Plaintiff,     :
                                       :
v.                                     :     3:07cv800
                                       :
STAMFORD BOARD OF EDUCATION,           :
    Defendant.     :

## RULING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff E.K.'s action challenging the defendant Stamford Board of Education's expulsion order against him is brought pursuant to the Individuals with Disabilities in Education Act ("IDEA"), the Rehabilitation Act, and 42 U.S.C. § 1983.  Specifically, on this motion, plaintiff requests that this Court enter a temporary restraining order and/or preliminary injunction pursuant to the "stay put" provision of Section 1415(j).

Defendant argues that plaintiff cannot prevail since he is no longer eligible for special education and he has not exhausted his administrative remedies challenging his exit from special education.  For the following reasons, the Court will deny the motion for temporary restraining order and preliminary injunction.

### FACTUAL BACKGROUND

This brief factual background is reflected in facts asserted in the complaint, the parties' memoranda, and the affidavits thereto.

The plaintiff is a senior at Stamford High School in Stamford, Connecticut.

During the 2004-2005 academic year, plaintiff was enrolled as a special

1

education student at the Academy of Information Technology and Engineering ("AITE"). At a meeting on March 8, 2005, plaintiff, parents and school team members agreed that plaintiff had satisfied the goals of his Individual Education Plan ("IEP"), and therefore plaintiff should be dismissed from special education. An IEP is a tailored written outline of the unique educational needs of an individual student,[1] which is designed by a Planning and Placement Team ("PPT").[2] The PPT is a group of parents, educators, and administrators that determines the placement for and services required by a student designated for special education services. See Conn. Gen. Stat. §10-76 et seq.

During the 2005-2006 academic year, plaintiff remained a regular education student. In September 2006, plaintiff commenced his senior year at Stamford High School. Neither the parents nor the student raised any concerns regarding plaintiff's need for special education.

After an altercation between plaintiff and another student on February 1, 2007, plaintiff was suspended from school. Plaintiff admits that the school was not aware of his medical and educational history.

---

[1] See 20 U.S.C. §1414(d)

[2] A child's IEP must be revised at least annually. It includes statements of a disabled child's present level of education, instructional objectives and criteria for determining if the child is meeting these goals. It also includes an outline of the specific educational services to be provided to each disabled child, and any necessary transition services, along with a statement of interagency responsibilities for each child. See 20 U.S.C. §1414.

On February 27, 2007, plaintiff was again suspended from school for fighting with another student. Despite the suspension, the parents did not notify the school of plaintiff's disability.

On March 26, 2007, plaintiff was arrested on a felony hate crime charge related to racist messages left on a classmate's voice mail. The school administrators and parents agreed that plaintiff would not be permitted on the school property or to participate at school sponsored events. However, plaintiff was provided with homebound instruction. Again, the parents did not notify the school of plaintiff's disability.

In a letter dated April 5, 2007, the Stamford Public Schools informed the parents that it would be moving for the student's exclusion from Stamford High School. An expulsion hearing was scheduled for May 3, 2007.

On April 20, 2007, the parents filed with the Connecticut State Department of Education a request for a due process hearing challenging plaintiff's exit from special education and asserting a violation of procedural rights relevant to plaintiff's final PPT meeting. On April 27, 2007, plaintiff filed with the due process hearing officer an application to enjoin the Board from proceeding with the expulsion.

In an order dated May 2, 2007, the Hearing Officer denied the parents' application for injunctive relief.

On May 11, 2007, the Board held the expulsion hearing, resulting in plaintiff's expulsion from Stamford High School and all school-related activities.

To date, the Board provides plaintiff with ten hours of tutoring per week in his major academic areas, enabling plaintiff to obtain the credits necessary for graduation.

**DISCUSSION**

Plaintiff argues that he was improperly exited from special education in March 2005 and must be considered eligible for special education services pursuant to the stay-put provision of the IDEA. Defendant counters, <u>inter alia</u>, that plaintiff is not currently eligible for IDEA's stay-put protection, and that plaintiff has not exhausted the requisite administrative remedies.

<u>Statutory Framework</u>

Congress enacted the IDEA to ensure access to a "free appropriate public education" for all disabled children. 20 U.S.C. § 1400(d)(1)(A).

The Supreme Court defines the phrase "free appropriate public education" as "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." <u>Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 188-89 (1982).

If the parents of a disabled child disagree with the educational plan outlined by the PPT, the parents may seek review of such IEP through an impartial due process hearing. Conn. Gen. Stat. §10-76h(a)(1). Following the hearing, an aggrieved party may bring a civil action in state or federal court. 20 U.S.C. §1415.

When there is a dispute between a child's parents and the responsible public agency about the child's placement, the IDEA states that "the child shall remain in the then-current educational placement" unless the parties otherwise agree. 20 U.S.C.

§1415(j). Generally, parents invoke the then-current placement, or stay-put provision, to maintain the child's then-current educational placement when they disagree with a school board's proposed change of the child's placement. The purpose of the stay-put provision is to "prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings," School Comm. Of the Town of Burlington v. Department of Educ. Of Mass.,471 U.S. 359, 373 (1985), thereby protecting the interests of the parents and their children. See Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 84 (3d Cir. 1996).

Where a party is seeking an order from the court upholding a stay-put placement under the IDEA, the IDEA statute is, in effect, an automatic preliminary injunction.

> The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships.

Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982).

Plaintiff bears the burden of proof as the party seeking relief. Schaffer v. Weast, 126 S.Ct. 529, 534 (2005). However, once "a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief." Drinker v. Colonial School District, 78 F.3d 859, 864 (3d Cir. 1996).

This case involves the discipline of a student who has exited from special education approximately two years ago. Section 1415(k)(5)(A) provides that IDEA protection extends to students who are not eligible for the special education but who receive discipline if the local educational agency has knowledge that the student was a

5

child with disability prior to the behavior that precipitated the misconduct. The local educational agency is considered to have knowledge of a student's disability if, prior to the behavior that precipitated the disciplinary action,

> (i) the parent of the child has expressed concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services;
>
> (ii) the parent of the child has requested an evaluation of the child pursuant to section 1414(a)(1)(B) . . . ; or
>
> (iii) the teacher of the child, or other personnel of the local educational agency, has expressed specific concerns about a pattern of behavior demonstrated by the child, directly to the director of special education of such agency or to other supervisory personnel of the agency.

20 U.S. C. § 1415(k)(5)(B). A local educational agency shall not be deemed to have knowledge that a student has a disability if the student was evaluated and it was determined that he did not have a disability. 20 U.S.C. § 1415(k)(5)(C). If a local educational agency does not have such prior knowledge, the student may be subjected to disciplinary measures applied to children without disabilities who engaged in comparable behaviors. 20 U.S.C. § 1415(k)(5)(D)(i). That student may later request evaluation as a child with a disability under the IDEA and gain the benefit of special education services; however, pending the results of that evaluation, the child shall remain in the educational placement determined by the school board. 20 U.S.C. § 1415(k)(5)(D)(ii). Here, plaintiff is not currently a special education student, and he does not proffer that defendant had knowledge of his disability prior to the conduct precipitating the disciplinary action. Thus, plaintiff is not entitled at this time to the stay-put protections.

Administrative Remedies

Plaintiff's claim that he is entitled to IDEA's stay-put provisions because he was improperly exited from special education fails due to the administrative exhaustion requirement of IDEA.

A plaintiff claiming to be aggrieved by procedural violations of IDEA must exhaust his or her administrative remedies. Polera v. Bd. of Educ. of Newburgh, 288 F.3d 478, 481 (2d Cir. 2002).

The exhaustion requirement is excused when it would be futile because the administrative procedures do not provide an adequate remedy. J.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004), cert. denied, 544 U.S. 986 (2005). The party seeking to avoid exhaustion bears the burden of demonstrating that he should be excused from the exhaustion requirement. Honig v. Doe, 484 U.S. 305, 327 (1988). In Murphy v. Arlington Central School District Board of Education, the Second Circuit held that a student alleging violation of IDEA's stay-put provision was excused from the administrative exhaustion requirement since immediate relief was "essential for the vindication of this particular IDEA right." 297 F.3d 195, 200 (2d Cir. 2002).

Unlike the student in Murphy, plaintiff is not currently a special education student entitled to the IDEA protection and vindication of his statutory right to a stay-put order. Plaintiff has yet to obtain an administrative hearing officer decision challenging his exit from special education and determining his special education eligibility. Accordingly, the Court lacks jurisdiction to adjudicate his entitlement to the stay-put provision based on IDEA eligibility after an alleged improper dismissal from special education.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for a temporary restraining order and preliminary injunction [#4] is DENIED.

Dated this 15th day of June, 2007, at Bridgeport, Connecticut.

_____
Warren W. Eginton
Senior United States District Judge