UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

E.K BY AND THROUGH HIS          :
PARENTS AND NEXT FRIENDS,       :
MR. AND MRS. K.                 :
                                :
                                :
v.                              :        C.V. NO. 3:07CV800 (WWE)
                                :
STAMFORD BOARD OF EDUCATION     :
                                :

RULING ON RENEWED MOTION FOR ATTORNEYS' FEES

Pursuant to Fed. R. C.V. P. 54(d) and 20 U.S.C. §1415(I),
the defendant, Stamford Board of Education (the "Board"), renews
its motion for an award of attorneys' fees and costs incurred in
its defense of this action.[1] **[Doc. #72].** Defendant's motion seeks
attorneys' fees in the amount of $47,109.50 and costs of $780.13,
for a total award of $47,889.63, under the Individuals with
Disability Education Improvement Act (IDEIA), 20 U.S.C.
§1415(i)(3)(B)(II) and (III). Claiming the suit was "frivolous,
unreasonable or without foundation" and was "presented for an
improper purpose," [doc. #73 at 11], defendant asserts that the

---

[1]The original Motion for Attorneys' Fees was denied without
prejudice to refiling after resolution of the case. [Doc. #35,
48]. Judge Eginton granted defendant's Motion for Summary
Judgment and denied plaintiff's Motion for Summary Judgment on
May 29, 2008. [Doc. #70]. The Clerk entered Judgment on May 29,
2008. [Doc. #71].  Defendant renewed its Motion for Attorneys'
Fees on June 12, 2008, [doc. #72], incorporating by reference its
initial motion for attorneys' fees and supporting materials.
[Doc. ##35, 36]. Plaintiff filed memoranda in opposition to both
motions. [Doc. ##38, 74]. The motion was referred to the
undersigned by Judge Eginton on October 10, 2008. [Doc. #76].

amount sought represents fees and costs incurred in defending plaintiff's claims prior to July 9, 2007, and relates primarily to the claims raised under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq., and the filing of its initial application for fees and costs.  Defendant seeks fees and costs from plaintiff's counsel only, stating that in its view, "the existing record demonstrates that [plaintiff's] counsel has been the connecting link and driving force throughout this litigation and, therefore, should bear any fees awarded . . . ."[2] [Doc. #73 at 12].

For the reasons that follow, defendant's Renewed Motion for Attorneys' Fees **[Doc. #72]** is **GRANTED**.


PROCEDURAL HISTORY

Plaintiff filed this action against the Board on May 21, 2007, seeking declaratory and injunctive relief pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400 et seq., the Rehabilitation Act, 29 U.S.C. §§701 et seq., the Civil Rights Act, 42 U.S.C. §1983 et seq., and the Due Process Clause of the United States and Connecticut Constitutions. [Doc. #1, 4]. A hearing on the Motion for Temporary Restraining Order ("TRO") and Motion for Preliminary

---

[2]A fee award in favor of a school board is available under 20 U.S.C. §1415(i)(3)(B)(i)(II) only against the attorney conducting the litigation, while an award under §1415(i)(3)(B)(i)(III) is available against both the attorney and the parents.

2

Injunction was held on May 31, 2007. [Doc. #21].  The Board filed a Motion to Dismiss on June 14, 2007, seeking dismissal of the case for failure to exhaust administrative remedies under the IDEA, and for failure to state a claim for relief with regard to the constitutional claims challenging plaintiff's expulsion pursuant to 42 U.S.C. §1983. [Doc. #24].  On June 15, 2007, Judge Eginton denied plaintiff's Motions for TRO and Preliminary Injunction.  [Doc. #26].

On July 27, 2007, Judge Eginton granted defendant's Motion to Dismiss absent objection. [Doc. #30].  Judgment for defendant entered on July 31, 2007. [Doc. #31].[3]

On August 2, 2007, plaintiff filed a Motion for Reconsideration of the dismissal and sought leave to file his opposition to the Motion to Dismiss. [Doc. #32]. The motion for reconsideration was granted on September 11, 2007, and judgment was vacated. [Doc. #39]. On September 28, 2007, plaintiff filed his objection to the motion to dismiss. [Doc. ##40, 41]. Defendant filed a reply brief on October 15, 2007, and subsequent authority on December 17, 2007. [Doc. ##42, 43]. On January 8, 2008, Judge Eginton converted the Motion to Dismiss to a Motion

---

[3]For purposes of this fee petition, defendant only seeks fees up through July 2007, explaining "[W]hile the Board expended significant fees defending against this action subsequent to August 2007, as the plaintiff continued to pursue his meritless claims, the Board seeks only those fees and costs associated with its defense of this case at the time of its earlier application, which at that time concerned for the most part the IDEA claim and the preparation of its initial application for fees." [Doc. #73 at 2].  After Judgment entered on July 31, 2007, plaintiff filed a Motion for Reconsideration simultaneously with his objection to defendant's Motion to Dismiss. [Doc. #32, 33, 34].

for Summary Judgment and set a response date of February 10, 2008.  [Doc. #47].

On February 10, 2008, plaintiff filed his response to the Motion for Summary Judgment [doc. #50], together with a Motion for Leave to File a First Amended Complaint, stating that the "purpose of the amended complaint is to delete the former first [count], which has been voluntarily withdrawn, . . . ."[4]  [Doc. #49 at 1]. Count One alleged a violation of the "stay put" provision of the IDEA. [Doc. #1]. Plaintiff raised no argument in opposition to an entry of summary judgment on the IDEA claim. [Doc. #50]

On March 3, 2008, defendant filed a Supplemental Motion to Dismiss, raising additional grounds to dismiss the case in its entirety. [Doc. ##57, 58]. Judge Eginton granted defendant's Motion for Summary Judgment on May 28, 2008. Judgment entered for the defendant on May 29, 2008. [Doc. #71].

Defendant filed a Renewed Motion for Attorneys' Fees [Doc. #72] on June 12, 2008.  The motion was referred for decision on October 3, 2008. [Doc. #76].

BACKGROUND FACTS

The original complaint arose from the 90-day expulsion of E.K., then a student at Stamford High School, in May 2007.  The plaintiff claimed, among other things, that he was entitled to the protections afforded to disabled students, namely the stay-

---

[4]Judge Eginton granted the Motion for Leave to File a First Amended Complaint on May 6, 2008. [Doc. #69].

put provision of the IDEA, codified at 20 U.S.C. §1415(j), and sought an emergency order restraining the Board from enforcing his expulsion.  Plaintiff also alleged that the Board violated his due process rights in expelling him and that Connecticut's expulsion statute, Conn. Gen. Stat. §10-233d, was "unconstitutionally vague" as applied to his misconduct.  In addition to preliminary relief, plaintiff sought various forms of redress, including an order declaring his expulsion "void and of no effect," costs, and attorney's fees pursuant to 20 U.S.C. §1415(i) and 42 U.S.C. §1983.

As set forth above, plaintiff filed an Amended Complaint on February 10, 2008, voluntarily withdrawing his IDEA claim.

The following facts briefly summarize the allegations in plaintiff's Complaint and Amended Complaint. [Doc. ##1, 69].

In May 2007, plaintiff was a seventeen year old senior at Stamford High School. [Amend. Compl. Doc. #69 ¶ 4].  On February 1, 2007, plaintiff and a female classmate (the "Classmate") engaged in a "verbal altercation" in school, id. ¶ 7; doc. #1 ¶43, as a result of which plaintiff was suspended from school. [Doc. #69 ¶9].  On February 27, plaintiff was attacked by the Classmate's boyfriend, resulting in a second suspension. [Doc. #1 ¶50].

Following plaintiff's first suspension, on February 3, 2007, the Classmate received several "racist voice messages" and identified plaintiff's voice as "possibly" one of the voices on the messages.  Id. ¶¶10-11, 14.  On March 26, plaintiff was

arrested by the Stamford Police.  Id.  ¶25.  On March 30, after meeting with plaintiff and his parents to discuss the threatening voice mail messages, the Board notified the parents that plaintiff would be suspended from Stamford High School for a violation of Stamford Board of Education Policy and Administrative Regulation 5131-R, III, D, 9 and 10. [Doc. #20, O'Callahan Decl. Ex. H (suspension notice); Ex. T (Board Policy)].

The Board subsequently provided the parents with notice that it would be conducting an expulsion hearing regarding plaintiff's alleged conduct pursuant to Conn. Gen. Stat. §10-223d. [Doc. #20, O'Callahan Decl. Ex. J (initial expulsion notice dated April 5, 2007); Ex. P (notice of April 17, 2007, for rescheduled expulsion hearing); Doc. #49 ¶28].  On April 20, the parents filed a due process complaint under the IDEA, alleging that the Board had illegally dismissed plaintiff from the special education program on March 8, 2005, and challenging that decision. [Doc. #1 ¶54]. Also on April 20, the parents requested postponement of the expulsion hearing because plaintiff "must be considered a special education student by operation of the "stay put" provisions in the IDEA §1415(j), and the expulsion hearing cannot go forward until a PPT is convened according to Conn. Gen. Stat. §10-233d(I) to consider if the conduct complained of was caused by plaintiff's disability." [Doc. #1 ¶55].  On April 27, the parents submitted to a special education Hearing Officer an application to enjoin the Board from going forward with the expulsion

hearing. [Doc. #1 ¶57].  The Hearing Officer denied the parents'
application for injunctive relief on May 2, 2007, and dismissed
the due process complaint in its entirety on July 6, 2007. [Doc.
#1 ¶60; Doc. #37, Freedman Decl. Ex. A ¶¶5,9].

On May 11, 2007, the Board held an expulsion hearing,
resulting in plaintiff's expulsion from Stamford High School and
all school related activities. [Doc. #26 at 3].  The Board
provided plaintiff with ten hours of tutoring per week to enable
him to obtain the credit necessary for graduation. [Doc. #26 at
4].

On May 22, 2007, this lawsuit was filed, alleging that the
Board violated plaintiff's rights under the IDEA, Section 504 of
the Rehabilitation Act ("Section 504"), 29 U.S.C. §§701 et seq.,
42 U.S.C. §1983, and the Due Process Clause of the United States
Constitution. [Doc. #1 at ¶1].  Plaintiff sought a Temporary
Restraining Order and Preliminary Injunction, directing the Board
to, among other things, "maintain E.K.'s . . . current status as
a child requiring special education and related services," and
readmit him to Stamford High School, pending the outcome of the
case.  See Doc. #4 at 1.  In support of this request for
injunctive relief, the parents argued that plaintiff was
improperly exited from special education well over two years
before, in March 2005, and thus must be considered eligible for
special education services, notwithstanding that plaintiff was
not receiving such services, pursuant to the "stay-put" provision
of the IDEA.  Id. at 4-8.  A hearing on the motion for

preliminary injunction was held on May 31, 2007. [Doc. #21].

Judge Eginton denied plaintiff's application for temporary restraining order and preliminary injunction on June 15, 2007. [Doc. #26].  In so doing, Judge Eginton made the following findings of fact.

1.  During the 2004-2005 academic year, plaintiff was enrolled as a special education student at the Academy of Information Technology and Engineering ("AITE"). [Doc. #24 at 1-2].

2.  At a meeting on March 8, 2005, plaintiff, parents and school team members agreed that plaintiff had satisfied the goals of his Individual Education Plan ("IEP"), and therefore plaintiff should be dismissed from special education. [Doc. #26 at 2].

3.  During the 2005-2006 academic year, plaintiff remained a regular education student.  In September 2006, plaintiff commenced his senior year at Stamford High School. [Doc. #26 at 2].

4.  Neither the parents nor the student raised any concerns regarding plaintiff's need for special education. [Doc. #26 at 2].

5.  After an altercation between plaintiff and another student on February 1, 2007, plaintiff was suspended from school. Plaintiff admits that the school was not aware of his medical and educational history. [Doc. #26 at 2]. The Court noted that, under 20 U.S.C. §1415(k)(5),

> IDEA protection extends to students who are
> not eligible for special education but who

receive discipline if the local educational
agency has knowledge that the student was a
child with disability prior to the behavior
that precipitated the misconduct.  The local
educational agency is considered to have
knowledge of a student's disability if, prior
to the behavior that precipitated the
disciplinary action:

> (i) the parent of the child has
> expressed concern in writing to
> supervisory or administrative
> personnel of the appropriate
> educational agency, or a teacher of
> the child, that the child is in
> need of special education and
> related services;
>
> (ii) the teacher of the child has
> requested an evaluation of the
> child pursuant to section
> 1414(a)(1)(B) . . . ; or
>
> (iii) the teacher of the child, or
> other personnel of the local
> educational agency, has expressed
> specific concerns about a pattern
> of behavior demonstrated by the
> child, directly to the director of
> special education of such agency or
> to other supervisory personnel of
> the agency.  20 U.S.C.
> §1415(k)(5)(B).

[Doc. #26 at 5-6].  Judge Eginton found that none of the criteria
set forth in 20 U.S.C. §1415(k)(5)(B) was met, finding "plaintiff
is not currently a special education student, and he does not
proffer that defendant had knowledge of his disability prior to
the conduct precipitating the disciplinary action." [Doc. #26 at
6].

    The Court found that plaintiff was not entitled to the stay
put protections of the IDEA. Further, Judge Eginton rejected
plaintiff's claim that he was not properly exited from special

education in March 2005, because plaintiff failed to satisfy the administrative exhaustion requirement of the IDEA with regard to his procedural claim. [Doc. #26 at 7].

Plaintiff failed to file a timely response to the Board's Motion to Dismiss and, on July 27, 2007, the Court granted the Board's motion absent objection and on the merits. [Doc. #30]. Judgment for defendant entered on July 31, 2007. [Doc. #31]. The Board seeks fees through July 31, 2007 in the amount of $47,109.50 and costs of $780.13.

ATTORNEYS' FEES under the IDEIA

Recent changes to the IDEA allow a prevailing local educational agency to recoup its attorneys' fees in appropriate cases. In re-authorizing and amending the IDEA in 2004, Congress expressly provided for the recovery of attorneys' fees by a prevailing educational agency in two situations. First, pursuant to 20 U.S.C. §1415(i)(3)(B)(i)(II), the court in its discretion may award attorneys' fees "to a prevailing party who is a . . . local educational agency against the attorney of a parent who files a complaint . . . that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." Second, pursuant to 20 U.S.C. §1415(i)(3)(B)(i)(III), an award of attorneys' fees is authorized "to a prevailing . . . local educational agency against the attorney of a parent, or against

10

the parent, if the parent's complaint . . . was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." The Board seeks an award of fees solely against plaintiff's counsel under the second provision. [Doc. #73 at 12].

The Second Circuit has held that, for purposes of considering a claim for attorneys' fees under a federal fee shifting statute such as the IDEA, a district court must make two determinations. Specifically, "[i]t must first determine whether the party seeking the award is in fact a prevailing party. If the party is a prevailing party, the court must then determine whether, under the appropriate standard, the party should be awarded attorneys' fees." Mr. L. v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006). Here, there is no dispute that defendant is a prevailing party in this case. The Court granted defendant's motion for summary judgment and judgment has entered in its favor. [Doc. ##70, 71].

As to the second inquiry, the IDEA provides two grounds for an award of fees to the Board 20 U.S.C. §§1415(i)(3)(B)(i)(II) and (III). See Arlington Central Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 300 n.2 (2006). Accordingly, the Court must determine if fees are recoverable under one or both of these statutory provisions.

11

DISCUSSION

For the reasons set forth below, the Court awards fees
pursuant to 20 U.S.C. §1415(i)(3)(B)(i)(II).

-Plaintiff lost his application for preliminary relief on
June 15, 2007, less than three weeks after the complaint was
filed.

-Judge Eginton found in denying the application for
preliminary injunction that plaintiff had been in the regular
education program at Stamford High School for more than two years
prior to his expulsion, and no concerns about any need for
special education had been raised by either the student or his
parents in that time.

-Plaintiff's parents did not claim that his misbehavior was
related to any disability, even after plaintiff was suspended on
February 1, and February 27, and arrested on March 26.

-Plaintiff admitted the school was not aware of his medical
and educational history when plaintiff was suspended.

-Plaintiff's counsel failed to file a timely opposition to
the Board's June 14, 2007 Motion to Dismiss [doc. #30], which
reiterated the Board's previous arguments that plaintiff was not
covered by the IDEA and had failed to exhaust his administrative
remedies.

-Notwithstanding these deficiencies, plaintiff's counsel
sought reconsideration of Judge Eginton's ruling on August 2007,
and opposed granting summary judgment to defendant on the IDEA
claim, even though a hearing officer had dismissed plaintiff's

due process claim as untimely.

-Plaintiff then opposed the Board's application for fees and costs, claiming that he would succeed on the merits.

-Twenty-four days later, on September 28, 2007, plaintiff conceded that the IDEA claim was moot and represented that it was voluntarily dismissed.

-However, plaintiff's counsel did not formalize the withdrawal until February 10, 2008, when he sought leave to file an amended complaint.

Plaintiff argues that the Board's request for attorneys' fees must be denied because, although the IDEIA was passed on December 3, 2004, it was not effective until July 1, 2005. He contends that the amendments included significant changes to §1415, which affect both the agency's and parents' rights and obligations.  In considering which version of §1415 to apply, plaintiff argues that courts have consistently applied the version of the IDEA in place at the time of the relevant conduct. [Doc. #75 at 12 citing cases].  Although plaintiff argues that the relevant events took place in March 2005, when plaintiff was dismissed from special education services, the Court disagrees. The relevant conduct complained of in this lawsuit, namely plaintiff's suspension and expulsion, took place in 2007, well after the effective date of the IDEIA. As Judge Eginton explained in his ruling denying injunctive relief,

> This case involves the discipline of a
> student who has exited from special education
> two years ago. Section 1415(k)(5)(A) provides
> that IDEA protection extends to students who

13

> are not eligible for the special education
> but who receive discipline if the local
> educational agency has knowledge that the
> student was a child with disability prior to
> the behavior that precipitated the
> misconduct.

[Doc. #26 at 5-6].[5]

Plaintiff also argues against an award of fees as the
factual allegations and legal arguments presented in the
complaint "were based on a fair and comprehensive presentation of
the applicable law and reasonable application of the law [to the]
facts of the case." [Doc. #38 at 16].  He asserts that "the Court
must also be wary of assessing attorneys' fees against the
plaintiff's counsel, and the chilling effect that such a ruling
would have on the opportunities for parents to obtain aggressive
representation to protect their disabled children's rights."
[Doc. #38 at 17].

On this record the Court finds that plaintiff's counsel
"continued to litigate [the IDEA claim] after the litigation
clearly became frivolous, unreasonable, or without foundation,"
20 U.S.C. §1415(i)(3)(B)(ii).  Specifically, after the Court
denied injunctive relief on June 15, 2007, plaintiff was clearly
on notice of the deficiencies of his IDEA claim.  The Court

_____

[5]After careful analysis, the Court found that plaintiff was
"not currently a special education student" and that he did not
"proffer that defendant had knowledge of his disability prior to
the conduct precipitating the disciplinary action." Id. at 6.
Thus, he was not entitled to the protections of the "stay-put"
provisions. Moreover, the Court found that because plaintiff
failed to challenge his March 2005 exit from special education
before an administrative hearing officer, the Court lacked
jurisdiction to hear these claims. Id. at 7.

declines to award fees attributable to associated defendant's litigation of the motion for injunctive relief, because it is unclear from the record whether it was established prior to the hearing on May 31 that the school was unaware of plaintiff's medical and educational history.

Even though the Board continued to incur expense after judgment entered for the defendant on July 27, 2007, those expenses were associated primarily with the Board's opposition to the merits of Counts Two and Three, not the IDEA claim. The defendant does not seek fees for those expenses so the Court does not award even the portion attributable to the IDEA claim.[6]

The Supreme Court has stated that "[i]t is central to the awarding of attorney's fees . . . that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." Blanchard v. Bergeron, 489 U.S. 87, 96 (1989). In making that assessment, courts in the Second Circuit apply the "presumptively reasonable fee" method (formerly the "lodestar" method), multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 163 (2d Cir. 2007), amended by 493 F.3d 110 (2d Cir. 2007).

---

[6]The Board's memorandum in opposition to plaintiff's motion for reconsideration on August 24, 2007 [doc. #37] did go to the merits of the IDEA claim. The fact that Count One was still technically pending was also the subject of the Board's reply to plaintiff's opposition to the motion to dismiss on October 15, 2007 [Doc. #42 at 1-2].

As the Second Circuit has made clear, the calculation of a
reasonable hourly rate requires the Court to consider a variety
of factors, including the twelve enumerated in Johnson v. Georgia
Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). See Arbor
Hill, 484 F.3d at 166 n. 1, 169."[7]  The reasonable hourly rate is
the rate a paying client would be willing to pay." Arbor Hill,
484 F.3d at 169.

Plaintiff does not challenge the hourly rates charged by any
particular defense attorney. Having considered the education,
experience and expertise of the attorneys, the Court finds that
the fees charged by counsel at Shipman and Goodwin at their
discounted public sector billable rates are reasonable in light
of the experience of counsel.

The second component in the fee award analysis involves
assessing the reasonableness of the time expended and adjusting
those parts of an invoice that reflect "excessive, redundant or
otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424,
434 (1983). Courts are "presumed to be knowledgeable as to the
reasonable time and the number of attorneys required to perform

---

[7]These factors include (1) the time and labor involved; (2)
the novelty and difficulty of the questions; (3) the level of
skill required to perform the legal service properly; (4) the
preclusion of employment by the attorney due to acceptance of the
case; (5) the attorney's customary hourly rate; (6) whether the
fee is fixed or contingent; (7) the time limitations imposed by
the client or the circumstances; (8) the scope of the misconduct
and the results obtained; (9) the experience, reputation and
ability of the attorneys; (10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with
the client; and (12) awards in similar cases. Johnson, 488 F.2d
at 717-19.

services competently and effectively . . . ." <u>Blank v. Talley Indus., Inc.</u>, 390 F. Supp. 1, 4 (S.D.N.Y. 1975).

The Court has thoroughly reviewed the hours expended by defense counsel and awards fees for time preparing the motion to dismiss [doc. ##24, 25, 27, 28] and the attorneys' fees application [doc. ##35, 36].  The total amount of fees awarded is $15,972.50, which includes time for the following attorneys: Gwen J. Goodman, Andreana R. Bellach, Patrick M. Fahey, Lee A. Duval and Susan S. Murphy.

Accordingly, the Board's Renewed Motion for Attorney's Fees is **GRANTED** in the amount of $15,972.50.


<u>CONCLUSION</u>

Accordingly, defendant's Renewed Motion for Attorneys' Fees **[Doc. #72]** is **GRANTED** in the amount of $15,972.50.  Plaintiff's counsel is ordered to pay attorneys' fees in the amount of $15,972.50, payable to defendant within thirty (30) days. If the award is not paid in full by that time, interest shall begin to accrue from that date forward.

This is not a recommended ruling.  This is a ruling on attorneys' fees and costs which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by

17

the district judge upon motion timely made.


SO ORDERED at Bridgeport this 31st day of March 2009.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE